IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DEBORAH BYERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-CV-00164-CAN |
| | § | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | § § § | |
| | § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income benefits [Dkt. 1]. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **AFFIRMED**.

### BACKGROUND

**I. PROCEDURAL HISTORY OF THE CASE**

On August 12, 2010, Deborah Byers ("Plaintiff") filed her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §1382c(a)(3), alleging an onset of disability date of January 31, 2002 [TR at 189-92]. Plaintiff's application was initially denied by notice on October 13, 2010, and again upon reconsideration on June 28, 2011, after which Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id*. at 132-42, 145-52. The ALJ conducted a hearing on December 13, 2012 ("Hearing"), and heard testimony from Plaintiff and Vocational Expert Melissa Brassfield

("Ms. Brassfield" or "VE"). *Id*. at 69-113. Plaintiff was represented by counsel at Hearing. *Id*. At Hearing, Plaintiff amended her alleged onset date to August 12, 2010. *Id* at 74. On January 10, 2013, the ALJ issued his decision denying benefits, and found Plaintiff not disabled at step five of the prescribed sequential evaluation process (discussed *infra*). *Id*. at 14-33. On March 5, 2013, Plaintiff requested that the Appeals Council review the ALJ's decision, and on January 23, 2014, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. *Id*. at 1-6, 12-13.

On March 23, 2014, Plaintiff filed her Complaint with this Court [Dkt. 1]. On June 10, 2015, the Administrative Record was received from the Social Security Administration ("SSA") [Dkt. 16]. On June 23, 2015, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 19]. Plaintiff filed her Brief on July 13, 2015 [Dkt. 21]. On September 10, 2015, the Commissioner filed her Brief in Support of the Commissioner's Decision [Dkt. 22].

## II. STATEMENT OF RELEVANT FACTS

### 1. *Age, Education, and Work Experience*

Plaintiff was born on July 27, 1960, making her fifty years of age at the time she applied for benefits [TR at 27, 189]. Plaintiff completed high school. *Id*. at 27, 204. Her past relevant work experience includes a cook and home attendant. *Id*. at 27, 108. Plaintiff asserts that her onset date of disability is August 12, 2010. *Id*. at 74. Plaintiff was an individual closely approaching advanced age at all times relevant to her application. *See* 20 C.F.R. § 416.963(d).

### 2. *Hearing Testimony – Vocational Expert Testimony*

At Hearing, Ms. Brassfield testified as a vocational expert [TR at 107-13]. The ALJ, after confirming there were no objections to Ms. Brassfield's qualifications to testify as an expert, asked

Ms. Brassfield to describe Plaintiff's work history, which she classified into two positions: (1) cook (Dictionary of Occupational Titles ("DOT") code 315.361-010; medium, but as performed heavy exertion;[1] skilled; specific vocational preparation ("SVP") of 6); and (2) home attendant (DOT code 354.377-014; medium; semi-skilled; specific SVP of 3). *Id*.[2] Ms. Brassfield specifically noted that Plaintiff performed the work of cook at a heavy exertion level, rather than the standard DOT definition level of medium exertion. *Id*. at 108.[3]

The ALJ then asked Ms. Brassfield to assume a hypothetical individual "is limited to light work and limited to simple tasks with routine supervision; be limited also to just occasional contact with coworkers and supervisors; be limited to occasional stooping, crawling, crouching, and kneeling; would never be permitted to climb – or wouldn't be allow [sic] – or wouldn't have the capacity to climb ladders, ropes or scaffolds; would require a sit/stand option, which I would define as just a temporary change of position; and would be limited to no reaching overhead with the right upper extremity." *Id*. The ALJ then asked Ms. Brassfield if the hypothetical individual could perform Plaintiff's past relevant work, and Ms. Brassfield testified that such individual could not perform Plaintiff's past work. *Id*. Ms. Brassfield, upon being asked by the ALJ whether any other jobs in the regional or national economy could be performed by the hypothetical individual, answered affirmatively that there are other jobs that exist in the national economy that the hypothetical individual could perform including: (1) small products assembler I (DOT code

---

[1] Each of the job classifications in the national economy is broken down into an exertion level: Sedentary, Light, Medium, Heavy, and Very Heavy. 20 C.F.R. § 404.1567.

[2] SVP is defined in the Dictionary of Occupational Titles ("DOT") as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, page 1009 (4th ed. 1991). Using the skill level definitions in 20 C.F.R. § 404.1568 and § 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

[3] Step four of the sequential analysis requires that the ALJ analyze whether, given Plaintiff's residual functional capacity, Plaintiff can perform her past work either as it was performed by Plaintiff or as it is generally performed in the national economy (based on the DOT). 20 C.F.R. § 404.1560.

ORDER – Page 3

706.684-022; unskilled; specific SVP of 2); (2) hospital product assembler (DOT code 712.687-010; unskilled; specific SVP of 2); and (3) housekeeping cleaner (DOT code 323.687-014; unskilled, specific SVP of 2). *Id*. at 109. Ms. Brassfield stated that nationally "around 175,000" and regionally "around 8,000" jobs as a small products assembler I existed; while nationally "around 40,000" and regionally "1,200" jobs as a hospital product assembler existed and finally that nationally "around 414,000" and regionally "26,000" jobs as a housekeeping cleaner existed. *Id*. Ms. Brassfield elaborated that, while the DOT does not address it, based upon her observations and experience in the field, the assembler positions allowed a straight sit/stand option, and the cleaner job would also allow a person to change positions. *Id*.

Plaintiff's attorney also examined Ms. Brassfield, asking her a hypothetical question which incorporated additional lifting and carrying limitations. *Id*. at 110. In response, Ms. Brassfield confirmed such hypothetical individual could not perform Plaintiff's past work. *Id*. Plaintiff's counsel further inquired regarding what Ms. Brassfield reviewed in identifying the jobs of small products assembler I, hospital product assembler and housekeeping cleaner. *Id*. at 111-12. Ms. Brassfield, in response, was not able to provide the census and/or *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") codes for the three jobs, but did testify that in reaching her conclusions she reviewed "OES data, things published by the State of Texas" as well as "Chamber of Commerce's . . . industry patterns in the state [and] things published by the Department of Texas." *Id.*

## III.  FINDINGS OF THE ALJ

### *1.  Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant

suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In this case, the determination was made at the fifth step concerning whether Plaintiff demonstrated impairments which prevented her from performing a significant number of jobs in the economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). At this juncture, the burden shifts to the Commissioner to show that there are jobs existing in the national economy which Plaintiff can perform, consistent with her medically determinable impairments, functional limitations, age, education, and work experience. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). Once the Commissioner finds that jobs in the national economy are available to the claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

### 2. *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 12, 2010, the application date, and any work done after that date was not performed at a substantial gainful activity level [TR at 19]. At step two, the ALJ determined that Plaintiff had the severe impairments of cervical pain secondary to cervical disc disease post fusion at the C5-C6 level, Raynaud's syndrome, chronic right shoulder pain secondary to degenerative joint disease, obesity, anxiety and depression. *Id*. At step three, the ALJ found that these impairments, or combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 21. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work. Specifically, "she can lift and/or carry 20 pounds occasionally and 10 pounds frequently, and stand, walk, and/or sit six hours of an eight-hour workday but must have a sit/stand option, defined as a temporary change in position. She can occasionally stoop, crouch, crawl, and kneel and should never climb ropes, ladders, or scaffolds. She is limited to no overhead reaching with the right upper extremity. Due to psychological based factors, she is limited to simple tasks with routine supervision and occasional contact with co-workers and supervisors." *Id*. at 23. Continuing the step four analysis, the ALJ then determined that Plaintiff was not able to perform her past relevant work. *Id*. at 27. The ALJ, made findings at step five, that Plaintiff's residual functional capacity allowed her to perform work that existed in significant numbers in the national economy, including as a small products assembler I, hospital product assembler, and a housekeeping cleaner. *Id*. at 28. Based on this determination, the ALJ concluded Plaintiff was

not disabled from August 10, 2010[4] through January 10, 2013, the date of the ALJ's decision. *Id.* at 29.

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

The issue on appeal is whether substantial evidence supports the ALJ's finding at step five that Plaintiff could perform work that exists in significant numbers in the national economy.

---

[4] The ALJ's Notice of Decision states that Plaintiff's application was filed on August 10, 2010 [TR at 17, 29]. Plaintiff's Application itself is dated for August 12, 2010 and at Hearing Plaintiff's counsel amended Plaintiff's alleged onset date to the date of application – to August 12, 2010 [TR at 74, 189]. The Parties briefing references both dates. The Court uses herein the August 12, 2010 date as the alleged onset of disability date.

ORDER – Page 7

Plaintiff argues that substantial evidence does not exist because (1) the Vocational Expert's testimony is in direct conflict with the DOT/SCO, and the ALJ failed to ask about and/or otherwise resolve such conflict as required by SSR 00-4p and/or (2) the Vocational Expert's testimony concerning the number of jobs Plaintiff could perform is not sufficiently reliable [Dkt. 21]. The Court takes up the issue of the alleged conflict first.

## I. *Whether A Conflict Exists Between the DOT, SCO and Vocational Expert Testimony*

Plaintiff contends that the ALJ committed reversible error in relying on VE testimony that conflicted with the DOT/SCO [Dkt. 21 at 5-7]. More specifically, Plaintiff alleges she could not have performed any of the jobs identified by the VE with the ALJ's limitation of no overhead reaching with her right upper extremity, and that the ALJ shirked his duty to ask about the conflict, prejudicing Plaintiff. *Id*. Commissioner argues, in response, that no actual conflict exists, and even if a conflict existed, any error is harmless or Plaintiff has waived the error by failing to raise the issue at Hearing [Dkt. 22 at 7-10].

By way of background, conflicts between vocational expert testimony and the DOT regarding job requirements occurred in the past with some regularity, causing the Commissioner to issue SSR 00-4p, which ensures ALJ's expose and reconcile any such conflicts before relying on the vocational expert testimony. SSR 00-4p, 2000 WL 1898704, at *1-3; *Huey v Colvin*, No. 3:14-CV-2861, 2015 WL 5771818, at *7 (N.D. Tex. Sept. 4, 2015) (citing SSR 00-4p).

SSR 00-4p states in relevant part:

> When a [vocational expert] . . . provides evidence about the requirements of a job or occupation, **the adjudicator has an affirmative responsibility to ask about any possible conflict** between that [vocational expert]. . . evidence and information provided in the DOT. In these situations, the adjudicator will: Ask the [vocational expert] . . . if the evidence he or she has provided conflicts with information provided in the DOT; and if the [vocational expert's] . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *4 (emphasis added). Ruling 00-4p thus places an affirmative duty on the ALJ to inquire into possible conflicts with the DOT. *Graves v. Commissioner*, 837 F.3d 589, 592 (5th Cir. 2016) (holding that an ALJ in a hearing "has an affirmative responsibility to ask about any possible conflict between the VE evidence and the DOT . . . before relying on VE evidence to support a determination of not disabled"). When a conflict arises, an ALJ is permitted to rely on the vocational expert testimony over the DOT if the record reflects an adequate basis or reasonable explanation for deviating from the DOT. *Dukes v Colvin*, 2015 WL 1442988, at *3 (N.D. Tex. Mar. 31, 2015) (citing *Carey v. Apfel*, 230 F.3d. 131, 146-147 (5th Cir. 2000)). In *Carey* the Fifth Circuit further held:

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . , we agree with the majority of circuits that **the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so** . . . Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is **whether there is substantial evidence supporting the Commissioner's determination** that this particular person can do this particular job or group of jobs.

*Carey*, 230 F.3d at 146-47 (emphasis added); *see also Dukes*, 2015 WL 1442988, at *3; *Augustine v Barnhart*, No. 1-00-CV-499, 2002 WL 31098512 at *9-10 (E.D. Tex. Aug. 27, 2002); *Hollan v. Apfel*, No. 3-00-CV-0002, 2001 WL 180151 at *6 (N.D. Tex. Feb. 20, 2001).

As a threshold matter, it is undisputed that the ALJ did not specifically ask or inquire of the VE at Hearing whether her testimony conformed with the DOT. The ALJ erred by failing to ask the VE directly whether a conflict existed. However, as discussed further below, the Court finds the error was harmless. *Huey*, 2015 WL 5771818, at *9 (citing *DeLeon v Barnhart*, 174 F. App'x 201, 203 (5th Cir. 2006) (noting that when the ALJ fails to discover and address conflicts between the testimony of a vocational expert and the DOT, the claimant is not entitled to relief unless he can show that he was prejudiced by the error).

In the instant case, the ALJ determined, at step five, that Plaintiff could perform the work of: small products assembler I, hospital product assembler and a housekeeping cleaner. Plaintiff asserts that each of these positions requires frequent (exists from 1/3 to 2/3 of the time) reaching and that Plaintiff's residual functional capacity was limited by the ALJ to "no overhead reaching with the right upper extremity"; therefore, Plaintiff cannot perform the jobs identified. [Dkt. 21 at 5-7]. Commissioner responds that, while Plaintiff argues a conflict, no actual or direct conflict exists. Commissioner asserts that the DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings [Dkt. 22 at 7-10]. And "Plaintiff has not shown that when the DOT indicates these jobs require frequent reaching, that means these jobs require frequent bilateral overhead reaching." *Id.* at 9.

Here, the VE testified that Plaintiff – with the limitations identified by the ALJ – could perform three jobs in the national economy. Indeed, the ALJ specifically instructed the VE in his hypothetical, prompting identification of the jobs, that Plaintiff was prohibited from reaching overhead with the right upper extremity. [TR at 108]. Plaintiff is correct that, according to the DOT, each of the three jobs identified by the VE require frequent reaching. *See* DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLE*S*, 1991 WL 645958, 706.684-022 Small Products Assembler I (1991 WL 679050), 712.687-010 Assembler, Plastic Hospital Products (1991 WL 679245), 323.687-014 Cleaner, Housekeeping (4th ed. 1991). However, the Court is not persuaded that this creates any actual or direct conflict between the VE's testimony and the DOT/SOC. Reaching is generally defined as "extending the hands and arms in any direction." SSR 85-15, 1985 WL 56857, at *7. The DOT job descriptions do not address whether these jobs can or cannot be done by a person with the use of only one hand or extremity. Many courts presented with this

exact issue, including the Eastern District of Texas, have refused to discern a conflict between the requirement of frequent reaching and a vocational expert's testimony that a person restricted in one extremity could perform the job. *See Fluck v. Colvin*, No. 1:12-CV-42, 2013 WL 5111772, *5 (E.D. Tex. Sept. 12, 2013); *Ridenhour v. Astrue*, No. 4:08-CV-156, 2009 WL 77765, *13 (N.D. Tex. Jan. 12, 2009) (finding no patent conflict where although reaching was required for job, the DOT did not specific the job must be performed by the dominant hand or arm or require bilateral use of the arms and hands); *Rodriguez v. Colvin*, No. 3:14-CV-32, 2015 WL 778852, *4 (W.D. Tex. Feb. 23, 2015) (no direct or obvious conflict between vocational expert and DOT where nothing in DOT job description indicated overhead reaching required for job); s*ee also, Phares v. Commissioner*, No. 3:07-CV-90, 2008 WL 2026097, *20-22 (N.D. W. Va. May 9, 2008); *Nagata v. Colvin*, No. SACV-13-1770, 2014 WL 4385943, *4 (C.D. Cal. Sept. 3, 2014) (finding no conflict between VE testimony and DOT with respect to job of assembler where claimant limited in one arm); *Calip v. Astrue,* No. Civ -08-15, 2009 WL 113011, *7-8 (W.D. Okla. Jan. 15, 2009); *Feibusch v. Astrue*, 2008 WL 583554, *5 (D. Haw. March 4, 2008) (neither the DOT or SCO explicitly state use of both arms is required); *Banks v. Astrue*, 537 F. Supp. 2d 75, 82 (D.D.C. 2008) (a job that requires reaching in general does not conflict with prohibition on reaching with right upper extremity); *Diehl v. Barnhart*, 357 F. Supp. 2d 804, 822 (E.D. Pa. 2005) (finding person with limited use of one arm could perform jobs with frequent reaching); *cf. Carey*, 230 F.3d at 146 (finding no actual conflict with vocational testimony that job could be performed with one hand because DOT did not address whether job required bilateral use of the arms and hands).

For example, in *Fluck v. Colvin*, the ALJ concluded that the claimant was unable to raise his left upper extremity overhead. 2013 WL 5111772. In his hypothetical to the vocational expert, the ALJ specifically stated there would no reaching overhead with the left upper extremity.

*Id*. at *5. The claimant argued therein, as Plaintiff does here, that a discrepancy or conflict existed in the VE's testimony that claimant could perform the job of parking lot attendant because the DOT definition for parking lot attendant requires frequent reaching. *Id*. The *Fluck* court found, relying on *Carey*:

> The DOT definition does not specify whether the reaching requirement could be achieved unilaterally, i.e. done with one upper extremity. As explained in *Carey*, implicit conflicts are possible and "the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation." Despite the plaintiff's argument to the contrary, the Court finds no direct conflict between the DOT and the VE's testimony. The DOT is silent as to the unilateral ability to reach regarding the parking lot attendant job's physical demands. Although the definition may require frequent reaching, there is no indication that this would necessarily involve frequent reaching by both extremities. The Fifth Circuit has noted that the DOT is not comprehensive in that it cannot and does not purport to include each and every specific skill qualification for a particular job. Because this case involves an implied or indirect conflict—not direct—the ALJ properly relied on the VE's testimony because the record provides an adequate basis for doing so. There is persuasive evidence to support the slight deviation from the DOT as based on the VE's testimony, including the evidence that the plaintiff is not limited in his reaching ability in his right upper extremity. Similar to *Carey*, where the claimant was limited to the use of one arm and hand, the facts of this case do not present any actual conflict between the DOT and the VE's testimony because the DOT does not include a specific requirement of bilateral dexterity for reaching abilities.

*Id*. (internal citations omitted).

Under the DOT, a job requiring "frequent" reaching does not necessarily require that a claimant be able to frequently reach with both hands. *See also Nally v. Astrue*, No. 3-10-CV-1631, 2011 WL 3844107, *5 (N.D. Tex. Aug. 29, 2011) (citing *Canton v. Astrue*, 2010 WL 5391184, *7 (E.D.N.Y. Dec. 22, 2010) ("where both hands are required to perform a listed job, the DOT has not been shy in saying so")). No actual conflict exists in Plaintiff's case; at most, an implied conflict exists. The ALJ's residual functional capacity determination did not preclude reaching in general – the limitation is only in the use of Plaintiff's right upper extremity. And the VE testified, in

response to a hypothetical expressly incorporating Plaintiff's reaching limitation, that Plaintiff could perform the aforementioned jobs.

Moreover, Plaintiff had counsel at Hearing who had a full opportunity to cross-examine the VE on the effect of Plaintiff's reaching limitation on her ability to perform the identified jobs. Plaintiff's counsel failed to raise or otherwise challenge the VE's testimony regarding the reaching issue. Because no conflict was suggested during cross-examination, nothing at Hearing triggered any reason for the ALJ to "obtain a reasonable explanation" for and explain his resolution of conflicts. *See Carey*, 230 F.3d at 146; *Veal v. Astrue*, 618 F. Supp. 2d 600, 611-12 (E.D. Tex. 2009). Claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the provisions of the DOT and present that conflict as reversible error when the conflict was not deemed sufficient to merit adversarial development at Hearing. *Carey,* 230 F.3d at 146-47. The Court declines to reverse the Commissioner's determination and finds that the ALJ properly relied on the VE's unchallenged testimony that Plaintiff could perform the jobs identified.

## II.     *Whether the Vocational Expert Testimony Regarding the Number of Jobs is Reliable*

Plaintiff also argues that the Commissioner cannot show that there are a significant number jobs in available in the national economy that Plaintiff can perform because the VE's testimony regarding the number of jobs "was not based upon sufficient facts and data and it was not the product of a reliable principle or method" [Dkt. 21 at 10]. Here, the ALJ found at step five that, given Plaintiff's residual functional capacity, she could perform the aforementioned three jobs, and that nationally "around 175,000" and regionally "around 8,000" jobs as a small products assembler I existed, while nationally "around 40,000" and regionally "1,200" jobs as a hospital product assembler existed, and finally that nationally "around 414,000" and regionally "26,000"

jobs as a housekeeping cleaner existed. Plaintiff's argument in the instant case focuses not on the actual number of jobs, which this Court declines to find is insignificant,[5] but instead on the reliability of the VE, arguing that the standards of *Daubert* should be applied to the consideration of the VE's testimony. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).

Plaintiff's argument is without merit. Plaintiff cites no controlling or persuasive authority to support her argument. Moreover, *Daubert* applies to Rule 702 of the Federal Rules of Evidence. The Federal Rules of Evidence do not apply in Social Security proceedings. Therefore, *Daubert* has no applicability to the instant case. *Gillespie v. Astrue*, No. 1:13-CV-00219, 2014 WL 1168872, at *9 (W.D. La. Mar. 21, 2014) (ALJs who conduct SSA hearings have no *Daubert* gate-keeping duty for vocational expert testimony). *See also Wleczyk v. Astrue*, No. 13-121-BAJ-SCR, 2015 WL 1258036 (M.D. La. Mar. 19, 2015); *Dye v. Astrue*, No. 13-00220-BAJ-SCR, 2015 WL 410689 (M.D. La. Jan. 29, 2015); *Xiong v. Commissioner*, No. 1:13-CV-1161-JLT, 2014 WL 3735358 (E.D. Cal. July 26, 2014) (collecting cases where courts rejected argument that vocational expert's testimony was not substantial evidence because the VE did not identify the source of jobs data or describe methodology). In addition, the Court notes at the outset of the Hearing, the ALJ expressly questioned the VE regarding her qualifications and inquired whether Plaintiff's counsel had any objection to her qualifications to testify as an expert witness, to which Plaintiff's counsel unequivocally responded "[n]o objections" [TR 107]. Plaintiff also offered no evidence contrary to the VE's testimony. Plaintiff has not demonstrated that the ALJ's reliance on the VE's

---

[5] The district courts in this circuit have not used a bright-line standard for what constitutes a "significant number" of jobs in the national economy; rather, the determination of whether the numbers provided are "significant" is left to the sound discretion of the ALJ or reviewing court upon a pragmatic consideration of both the number of DOT occupations identified, and the number of jobs available. *Mercer v. Halter*, No. 4:00-CV-1257-BE, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (noting that the question of whether work exists in significant numbers "has been left to the trial judge's common sense in the face of the statutory language and a particular fact situation"); *Davis v. Astrue*, No. 3-06-CV-883-B, 2008 WL 517238, at *5 (N.D. Tex. Feb 28, 2008) (finding "significant numbers" decision is a factual determination).

testimony was improper; accordingly, the Court finds that the ALJ's findings pertaining to the number of jobs that exist in the economy for the jobs identified by the VE is supported by substantial evidence. *Perez v. Barnhart*, 415 F.3d 457 (5th Cir. 2005); *Cleamons v. Colvin*, No. 3:14-CV02800, 2015 WL 5326167 (N.D. Tex. Sept. 14, 2015) (when a plaintiff offers no evidence contrary to the vocational expert's testimony, the claimant fails to meet burden of proof under fifth step of the disability analysis).

## CONCLUSION

The Court concludes that the ALJ properly conducted the sequential analysis and found that Plaintiff was not disabled. Pursuant to the foregoing, the decision of the Commissioner is **AFFIRMED**.

**SIGNED this 10th day of March, 2017.**

_____

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE